# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-1991

MARIS HERZOG,

*Plaintiff-Appellant*,

v.

VILLAGE OF WINNETKA, ILLINOIS, and WINNETKA POLICE
OFFICERS POWELL and COLLERAN,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 4439—William J. Hibbler, *Judge*.

ARGUED SEPTEMBER 24, 2002—DECIDED NOVEMBER 5, 2002

Before BAUER, POSNER, and KANNE, *Circuit Judges*.

POSNER, Circuit Judge. The plaintiff brought suit under
42 U.S.C. § 1983 against the Village of Winnetka, a suburb
of Chicago, and two of its police officers, charging false
arrest, and the employment of excessive force in the
course and aftermath of the arrest, in violation of the
Fourth Amendment (made applicable to state action by the
Fourteenth Amendment). *Graham v. Connor*, 490 U.S. 386,
394 (1989); *Lester v. City of Chicago*, 830 F.2d 706, 710, 713
(7th Cir. 1987). The district judge granted summary judg-

ment for the defendants; the plaintiff appeals only the dismissal of the claims against the individual defendants.

The defendants' brief, in its statement of facts, states only that "Defendants make no dispute with the factual statement submitted by the Plaintiff [i.e., the statement of facts in the plaintiff's brief] and accept all statements made therein as true and complete." This amounts to a stipulation that the appeal is to be decided on the basis of the facts stated in the plaintiff's statement of facts, whether they are true or false. With immaterial exceptions, judges do not interrogate factual assertions made by a party unless his opponent contests them. "It is fundamental that the Court of Appeals may accept the statement of the appellant touching on the facts of the case unless these are controverted by the appellee. The Court cannot be expected to search the record for support of all of the statements of fact made in appellant's brief. It does so only where a controversy as to such statement is created by a contrary statement contained in the brief of the appellee." *Investment Funds Corp. v. Bomar*, 306 F.2d 32, 32-33 (5th Cir. 1962) (per curiam). See also *Neuens v. City of Columbus*, 303 F.3d 667, 670-71 (6th Cir. 2002); *Williams v. W.M.A. Transit Co.*, 472 F.2d 1258, 1259 n. 3 (D.C. Cir. 1972); cf. *Albrechtsen v. Board of Regents*, No. 01-3577, 2002 WL 31397690 at *2 (7th Cir. Oct. 23, 2002); *United States v. Alvarez-Martinez*, 286 F.3d 470, 475-76 (7th Cir. 2002). The defendants were of course represented by counsel, and we are not disposed to relieve them from the consequences of their possibly improvident stipulation. The argument section of their brief contains some factual assertions inconsistent with the plaintiff's submission, but at argument their lawyer acknowledged being bound by the statement in their brief that the statement of facts in the plaintiff's appeal brief is "true and complete."

The facts alleged are as follows. The plaintiff, Maris Herzog, is a middle-aged, unmarried schoolteacher. After a dinner at which she had two sips of wine, she was driving home on Sheridan Road, which connects Winnetka to Chicago, where she lives, when she noticed something wrong with the lights on her dashboard. Seeing a police car in the vicinity she felt it safe (it was after midnight) to pull over to the side of the road and get out of her car to check her exterior lights. She was not speeding or violating any other rule regulating driving.

The police car, driven by defendant Powell, an inexperienced officer who had not yet completed her one-year probationary appointment, pulled up behind Herzog's car and Powell ordered her to get back into her car; Herzog obeyed. After checking her license and insurance card, both of which were in order, Powell ordered Herzog out of the car, walked her to the sidewalk, and pushed her down, and she fell in some bushes and hurt her hands. Powell then ordered Herzog to take a variety of "DUI performance tests," such as standing on one leg, touching her nose, and counting backwards from 1000. Herzog passed all the tests. Nevertheless Powell handcuffed Herzog and told her she was under arrest for driving under the influence. Herzog protested that she had only two sips of wine that evening. Powell then forced a plastic device (a "personal breath screening device") into Herzog's mouth, cracking a tooth, and told her to blow hard. The test revealed a blood-alcohol level of 0.00.

Powell transported Herzog to the Winnetka police station, where the other defendant, Officer Colleran, laughed at Herzog when she complained that the cuffs were too tight, although after an hour loosened them. Powell administered a breathalyzer test which confirmed the 0.00 blood alcohol—yet she told Colleran that she wanted to

take the plaintiff to a hospital for blood and urine testing, and Colleran approved, though there was no reason to believe that Herzog was intoxicated or had violated any law. At the hospital Herzog was given a blood test and then forced to give a urine specimen in the presence of Powell, although the hospital had installed a special toilet for taking urine samples while providing privacy and yet preserving the integrity of the sample. She was told that if she refused either test the consequence would be to lengthen the period for which her driving license would be suspended. Powell then returned Herzog to the Winnetka police station and had her charged with speeding and driving under the influence of drugs. Both charges were dismissed at Herzog's first court appearance. The blood and urine tests of course proved negative.

Recall that for purposes of this appeal the defendants have conceded that the facts we have recited are not only true, but complete; that is, there are no other facts on which to base our decision. Therefore we must accept that the arrest was made without probable cause and hence in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures; and that without provocation or excuse Powell shoved the middle-aged female plaintiff to the ground and Colleran refused to loosen the plaintiff's chafing handcuffs, both instances of excessive force, which, contrary to the defendants' argument, does not require either "a severe element of violence" or a threat of violence. "The Fourth Amendment protects against unreasonable seizures, not seizures that 'shock the conscience' or cause 'severe injuries.' . . . The objectively unreasonable seizure itself (regardless of the officer's motive or whether any injury inflicted was severe) crosses the constitutional threshold." *Lester v. City of Chicago, supra*, 830 F.2d at 712; see also *Williams v. Boles*, 841 F.2d 181, 183 (7th Cir. 1988) (dictum).

The applicability of this point (which follows *a fortiori* from the cases, such as *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), that hold that duly convicted criminals, complaining of cruel and unusual punishment under the Eighth Amendment visited on them by prison authorities, need not establish serious injury) to the present case is made clear in a long line of tight-handcuff cases, see *Mickle v. Morin*, 297 F.3d 114, 120 (2d Cir. 2002); *Bastien v. Goddard*, 279 F.3d 10, 16 (1st Cir. 2002) (per curiam); *Martin v. Heideman*, 106 F.3d 1308, 1312-13 (6th Cir. 1997); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993), though there is some contrary authority. See *Carter v. Morris*, 164 F.3d 215, 219 n. 3 (4th Cir. 1999); *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

And there is more. Forcible extraction of blood when there is no reason to think it will yield evidence of crime is an unlawful search, *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616 (1989); *Schmerber v. California*, 384 U.S. 757, 769-72 (1966); *United States v. Husband*, 226 F.3d 626, 630 (7th Cir. 2000), and therefore violates the Fourth Amendment. Gratuitously forcing a person to urinate in the presence of another is an invasion of privacy in the most elementary sense, and, as it seems to us, is (unless some justification is offered—in which event it wouldn't be gratuitous, see *Thompson v. Souza*, 111 F.3d 694, 703 (9th Cir. 1997); *Wilcher v. City of Wilmington*, 139 F.3d 366, 376-77 and n. 6 (3d Cir. 1998)) either an illegal search or a deprivation without due process of law of a form of liberty protected by the Constitution's due process clauses. *Skinner v. Railway Labor Executives' Ass'n, supra*, 489 U.S. at 617, 626; *Dimeo v. Griffin*, 943 F.2d 679, 682 (7th Cir. 1991) (en banc); *Taylor v. O'Grady*, 888 F.2d 1189, 1198 (7th Cir. 1989); *Piroglu v. Coleman*, 25 F.3d 1098, 1101-02 (D.C. Cir. 1994). And when an illegal arrest sets off a chain of indignities inflicted on the hapless victim, including offensive physical touchings

that would be privileged if the arrest were lawful, she is entitled to obtain damages for these indignities whether or not they are independent violations of the Constitution. For they are foreseeable consequences of the illegal arrest, and the ordinary rules of tort causation apply to constitutional tort suits. *Parrett v. City of Connersville*, 737 F.2d 690, 695 (7th Cir. 1984); *Jackson v. Sauls*, 206 F.3d 1156, 1168-69 (11th Cir. 2000); *Buenrostro v. Collazo*, 973 F.2d 39, 45 (1st Cir. 1992); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1359 (7th Cir. 1985) (concurring opinion).

Any intentional offensive physical touching is a battery unless privileged. That is the character of a false arrest in which the arrested person is physically seized. Just as in a battery case, so in a false arrest case, the defendant is liable for the foreseeable consequences of his tort. So even though cracking Herzog's tooth by inserting the personal breath-screening device into her mouth too forcefully may have been accidental, she can obtain damages for that injury also, because it was a reasonably probable consequence of an arrest made by a police officer who, if the plaintiff's facts are believed, was totally incompetent. That is Powell; Colleran's liability is limited to the events that ensued after Powell brought Herzog to the police station the first time.

As for Herzog's having "consented" to the blood and urine tests, Herzog did so under the threat that if she refused, her driving license would be suspended for a longer time than if she consented. That was coerced consent. *United States v. Jones*, 234 F.3d 234, 243 (5th Cir. 2000); *Jones v. Unknown Agents of Federal Election Commission*, 613 F.2d 864, 880 (D.C. Cir. 1979).

If the facts are as alleged, a reasonable police officer in the position of these defendants would have known for sure that their actions violated the Constitution, and so

the defendants cannot shelter behind the defense of official immunity. See *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999); *Hughes v. Meyer*, 880 F.2d 967, 970 (7th Cir. 1989).

So the judgment must be reversed. But we emphasize as is always important to do in these cases that in reciting the facts alleged by the plaintiff, we do not vouch for their truth. They have been stipulated to only for purposes of this appeal, the plaintiff has not moved for summary judgment and the defendants have reserved the right to contest her allegations in further proceedings in the district court should we reverse.

REVERSED AND REMANDED.

A true Copy:

    Teste:

                        _____

                        *Clerk of the United States Court of Appeals for the Seventh Circuit*