**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 17, 2011[*]
Decided August 17, 2011

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-2159

| | |
|---|---|
| TERRY L. JACKSON, *Plaintiff-Appellant.* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 11-C-191 |
| ROBERT HOLTON, et al., *Defendants-Appellees.* | Rudolph T. Randa, *Judge.* |

**O R D E R**

Terry Jackson and another member of the Vice Lords lifted an 11-year-old boy onto the roof of a community center, gave him a gun, and directed him to shoot another gang member, who was killed as he exited the building. That is the account given by the boy and other witnesses after the murder in 1991, and in 1993 a Wisconsin court sentenced Jackson to life imprisonment after a jury found him guilty of being a party to the crime of first-

---

[*]The defendants were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the appellant's brief and the record. *See* FED. R. APP. P. 34(a)(2)(C).

degree intentional homicide with a dangerous weapon, WIS. STAT. §§ 939.05, 940.01. *See State v. Jackson*, 538 N.W.2d 859 (Wis. Ct. App. 1995) (unpublished decision). Almost 18 years after his conviction, Jackson filed this action under 42 U.S.C. § 1983, claiming that the police officers who investigated the crime conspired with other members of the police department to falsely accuse him of participating in the murder and fabricate a warrant for his arrest. He also included parallel state-law claims that have since been abandoned. The district court screened the complaint, *see* 28 U.S.C. § 1915A, and concluded that it was both untimely and failed to state a claim.

In his February 2011 complaint, Jackson explains that he went to the police department voluntarily with a lawyer in January 1992, nine months after the murder, because he read in the newspaper that the police had an arrest warrant and were looking for him. At the station he was told by the two named defendants that they had a warrant, which they did not show him. Jackson has been in custody ever since that day. It was not until April 2010, Jackson continues, that he asked the clerk of the state trial court for a copy of the arrest warrant and was told that no homicide warrant could be found. This response led Jackson to conclude that there never was a valid arrest warrant or, for that matter, probable cause to arrest him. He was framed, Jackson surmises, and the police must have conspired to fabricate an arrest warrant. Attached to Jackson's complaint are affidavits—one from 2001 and the other from 2004—in which the shooter and another trial witness recant their trial testimony implicating Jackson.

As relief Jackson demands money but also a "formal statement" from the defendants in which they apologize and confess that their "actions were a product of fabrication." Jackson proposes to use this statement "in criminal Court as newly 'discovered evidence' for potential reversal of his criminal conviction." Yet despite this expression of Jackson's belief that success in this litigation will spring him from prison and get his conviction overturned, the district court read his complaint as alleging only that his arrest was illegal because the police lacked a valid warrant. But whether or not there was a warrant, the court reasoned, Jackson failed to state a claim under § 1983 because his factual allegations did not suggest that the police lacked probable cause to make the arrest. Moreover, the court added, Jackson's complaint was filed years after the statute of limitations had expired.

On appeal Jackson insists that his complaint states a claim and that the statute of limitations was tolled by his ignorance of the allegedly bogus arrest warrant. But Jackson has a bigger problem: his lawsuit is foreclosed by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which bars any suit under § 1983 where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction" unless the conviction has already been invalidated. The district court did not view *Heck* as an impediment because Jackson has couched his complaint in terms of whether his arrest was valid, and an unlawful arrest does

not necessarily imply the invalidity of a conviction which follows that arrest. *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007); *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008); *Reynolds v. Jamison*, 488 F.3d 756, 767 (7th Cir. 2007); *Hart v. Parks*, 450 F.3d 1059, 1065 n.5 (9th Cir. 2006). But the court's construction of the complaint is too generous: in his complaint Jackson does not simply demand nominal damages on the ground that the police jumped the gun and arrested him before they had probable cause; rather, he seeks more than $1 million and an apology that will lead to his conviction being overturned. What Jackson actually alleges is that the defendants engaged in a "conspiratorial coverup" that "led to an unlawful arrest, followed by an unlawful conviction and life ending sentence." Jackson essentially contends, then, that the defendants engaged in conduct akin to malicious prosecution, not just that they arrested him without probable cause. And a claim of malicious prosecution is barred by *Heck*, 512 U.S. at 485-86. *See Wiley v. City of Chicago*, 361 F.3d 994, 997 (7th Cir. 2004); *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 899-900 (2001).

And if Jackson's lawsuit was not barred by *Heck*, it would be foreclosed by the 6-year statute of limitations that in Wisconsin governs § 1983 claims. *See* WIS. STAT. § 893.53; *Malone v. Corr. Corp. of America*, 553 F.3d 540, 542 (7th Cir. 2009). As Jackson acknowledges in his brief, he waited more than 19 years after he was taken into custody to inquire "about the events surrounding his arrest." That delay in investigating is not a basis for equitable tolling. *See Saecker v. Thorie*, 234 F.3d 1010, 1014 (7th Cir. 2000).

AFFIRMED.