**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 15, 2020[*]
Decided October 15, 2020

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

Nos. 19-2559 & 19-2560

| | |
|---|---|
| JASON OLRICH, | Appeals from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | Nos. 18-cv-1981-pp & 18-cv-1982-pp |
| | |
| KENOSHA COUNTY, et al., | Pamela Pepper, |
| *Defendants-Appellees*. | *Chief Judge*. |

**O R D E R**

Jason Olrich filed two suits in 2018 alleging that Kenosha City and County officials violated his Fourth, Fifth, and Fourteenth Amendment rights during arrests in 2007 and 2012. The district court dismissed both suits, concluding that his claims were either time-barred or legally insufficient. Olrich appeals each ruling, and in light of their similarities, we have consolidated his appeals for decision. Because the Fourth and

---

[*] Appellees were not served with process in the district court and are not participating in this appeal. We have agreed to decide these cases without oral argument because the appellant's brief and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

Fourteenth Amendment claims accrued outside of the applicable limitations period, and because no incriminating statements were allegedly used against him within the limitations period, we affirm both judgments.

Olrich's suits allege that during two encounters state officials coerced him into giving false statements. The first encounter occurred in 2007. Olrich alleges that deputy sheriffs from Kenosha arrested him on drug charges, denied his requests for a phone and a lawyer, forced him to "contract" to be a confidential informant, and when Olrich later refused to inform, he was arrested and again denied an attorney. The second encounter occurred in May 2012. Two Kenosha police officers arrested Olrich for selling marijuana, denied his requests for an attorney, and physically coerced him to sign a confession, which led to charges that were quickly dropped. Then four years later, in 2016, when Olrich was prosecuted for an unrelated crime, a prosecutor sought to admit information about the 2007 and 2012 arrests. This was the first time Olrich saw reports about his earlier encounters and believes that they contain information that is false.

These suits, filed in December 2018 under 42 U.S.C. § 1983, came more than 11 years after the first encounter and 6 years after the second. In the first suit, he sues the sheriff's deputies who arrested him in 2007; in the second he sues an officer who arrested him in 2012. Because Olrich is now in prison, the district court screened both complaints under 28 U.S.C. § 1915A. It concluded that Olrich's claims about unlawful arrests and abuse during the interrogations in 2007 and May 2012 were, when he sued in December 2018, untimely under Wisconsin's six-year statute of limitations. Regarding Olrich's remaining claim that a violation of the Fifth Amendment accrued in 2016, the district court ruled that his complaint did not state sufficient facts. The complaint, for example, did not identify the information obtained from his old arrests or allege whether the prosecutor was allowed to use any of that information. Olrich moved to reconsider the rulings, re-arguing the accrual dates on his claims and invoking the "discovery" rule and the continuing-violations doctrine. The court denied the motions. It reasoned that Olrich knew about his alleged injuries by May 2012, and any discovery of evidence in 2016 did not prevent him from filing his complaints sooner.

On appeal, Olrich maintains that his claims are timely. Although failure to bring a claim within the limitations period is an affirmative defense, district courts may nonetheless dismiss a case under § 1915A as untimely when the complaint alleges facts that reveal that the claims are time-barred. *Jones v. Bock*, 549 U.S. 199, 215 (2007). Under § 1983, federal courts borrow the limitations period from the personal-injury laws of the

forum state, here, Wisconsin. *Malone v. Corr. Corp. of Am.*, 553 F.3d 540, 542 (7th Cir. 2009) (citing *Wilson v. Garcia*, 471 U.S. 261, 266, 279 (1985)). At the time of the events alleged in Olrich's complaints, this period was six years from the date that the claims accrued. WIS. STAT. § 983.35 (1979). Federal law dictates when the claims accrued. *Huber v. Anderson*, 909 F.3d 201, 207 (7th Cir. 2018).

We first address the claims in both suits under the Fourth Amendment (for unlawful arrest) and Fourteenth Amendment (for abuse during detention). Olrich filed the suits in December 2018, so to be timely these claims must have accrued no earlier than December 2012. Claims of unlawful arrest accrue either when the detention ends, *see Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018), or when detention converts to one authorized by valid legal process (like arraignment), *Wallace v. Kato*, 549 U.S. 384, 389–90 (2007). Olrich's arrests in 2007 and May 2012 allegedly occurred and ended more than six years before December 2018, rendering them untimely. The same is true of Olrich's claims that officers violated the Fourteenth Amendment by physically abusing him during his detentions in 2007 and May 2012. Any excessive force during a detention "is immediately actionable," *Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010), so these claims too accrued more than six years before December 2018. The district court therefore correctly dismissed these claims.

Olrich replies that his claims are not time-barred by virtue of the discovery rule and the continuing-violations doctrine, but he is incorrect. The discovery rule applies when a plaintiff does not learn of an injury and who caused it until after its occurrence. *United States v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010) (citing *United States v. Kubrick*, 444 U.S. 111 (1979)). Olrich, however, was present at his arrests and detention. Nothing prevented him from appreciating any alleged violations that occurred. Olrich admits as much by alleging that, shortly after his arrests, he put them behind him when he could not find an attorney to help him sue. Likewise, the continuing-violations doctrine applies only to claims necessarily comprised of a string of connected wrongful acts that, though beginning outside the limitations period, ends within the period (like hostile work environment claims). *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–17 (2002). Each constitutional violation Olrich alleges, however, constitutes its own singular, discrete event and ended outside of the limitations period.

That brings us to Olrich's claims under the Fifth Amendment. He argues that when the officers in 2007 and 2012 refused his requests for counsel and questioned him anyway, they violated his Fifth Amendment right against self-incrimination. A Fifth Amendment claim based on a denial of counsel during an interrogation accrues only if

and when any inculpatory statements obtained without counsel are used against the plaintiff in a criminal case. *See Johnson v. Winstead*, 900 F.3d 428, 434 (7th Cir. 2018). Olrich contends that this occurred in 2016 when, during a trial on unrelated charges, a prosecutor attempted to offer into evidence information about his 2007 and 2012 arrests. This criminal trial took place in 2016, so Olrich concludes that his Fifth Amendment claims would be timely in 2018.

Even if these claims were timely, the district court still rightly dismissed them because Olrich does not adequately allege a violation. He alleges only that he was notified in 2016 that the prosecution moved to admit information about the 2007 and 2012 arrests. As the district court observed, this allegation is insufficient because Olrich does not state that the prosecution sought to use incriminating statements that he made after he requested counsel, or even that the prosecutor's motion was granted. Given these omissions, we cannot plausibly infer a violation of the Fifth Amendment.

We have considered whether Olrich should receive an opportunity to amend his complaint to rectify these omissions, but conclude that an amendment is unnecessary. When a complaint fails to state a claim, the plaintiff ordinarily should receive at least one opportunity to amend it, unless an amendment would be futile. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015). This norm is even more acute when the district court exercises its authority to dismiss a claim sua sponte. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1022 (7th Cir. 2013). In dismissing the Fifth Amendment claims, however, the district court told Olrich about these omissions. Yet despite the court's advice about his claims' defects, Olrich did not assert, either during his motions for reconsideration in the district court or to us on appeal, that he can cure these shortcomings. Because he has not given us any reason to believe that an amendment might be worthwhile, it is not necessary to allow for one.

AFFIRMED